IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STEPHEN SCOTT PERIGO, #B08636, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-1540-RJD |
| | ) | |
| CRAIG RICHERT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**[1]

Plaintiff Stephen Perigo ("Perigo"), a former inmate in the custody of the Illinois Department of Corrections, brought this civil rights action pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred during his pretrial detention at Madison County Jail ("Madison County"). (Doc. 15, p. 1). In the Complaint, Perigo claims he was subjected to excessive force when he requested placement on suicide watch at Madison County on September 14, 2021. (Doc. 15, p. 1; Doc. 7, pp. 1-24). He sues the defendants for money damages. (*Id*. at 20).

Following a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, Perigo was allowed to proceed on the following claims:

> **Count 1:** Fourteenth Amendment claim against Lieutenant Craig Richert (incorrectly referred to as "Sgt. Richert") for responding to Perigo's request for placement on suicide watch by spraying him directly in the eyes with mace on September 14, 2020; and

---

[1] This matter has been referred to the undersigned, through the parties' consent, to conduct all proceedings in this case, including trial and final entry of judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 35).

**Count 3:** Fourteenth Amendment claim against Lieutenant James Haring (incorrectly referred to as "Deputy Haring"), Sergeant Michael Wallendorf (incorrectly referred to as "Deputy Wallendorff"), Deputy Lucas Geggus, and Deputy Christopher Decker for using excessive force against Perigo by slamming him to the floor, kicking him, spraying him with mace, and denying him clean water to rinse the mace from his face and body while he was in the "hole" on September 14, 2020.

(Doc. 15, pp. 3-5).

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. 53), to which Perigo did not respond.[2] For the reasons set forth below, Defendants' Motion is **GRANTED in part and DENIED in part**.

## Material Facts

Defendants' Motion for Summary Judgment contains a Statement of Facts with proper citation in the record in accordance with Local Rule 56.1. SDIL-LR 56.1(a); (Doc. 53, pp. 3-7). Due to Perigo's failure to file a response specifically disputing Defendants' Statement of Facts, all material facts set forth therein are being deemed admitted unless they are unsupported by evidence in the record based on the Court's independent review. SDIL-LR 56.1(g).

On September 14, 2020, at approximately 10:30 a.m., Perigo was booked into Madison County on the charge of aggravated battery. (Doc. 53, p. 3; Doc. 53-1, Perigo's Deposition, p. 8). During the booking process, Perigo stated he was suicidal. (Doc. 53 at 4; Doc. 53-1 at 8-9). The booking process was immediately suspended by Lieutenant Craig Richert. (Doc. 53 at 4; Doc. 53-2, Affidavit of Lieutenant Craig Richert, p. 1). Lieutenant Richert determined Perigo would be

---

[2] Defendants filed the Notice required for Motions for Summary Judgment in cases where the opposing party is pro se, informing Perigo of the consequences of failing to respond. (Doc. 54). Additionally, on October 31, 2024, the Court advised Perigo that failure to file a response to Defendants' motion by November 18, 2024, could result in all material facts set forth in Defendants' motion being deemed admitted in accordance with Local Rule. (Doc. 55, citing SDIL-LR 56.1(g)); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, the Seventh Circuit has repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.") (citation and internal quotation marks omitted).

placed on suicide watch, which included issuing Perigo a suicide-resistant gown. (Doc. 53 at 4; Doc. 53-2 at 1). Before Perigo was issued the gown, he was taken to Madison County's shower area. (Doc. 53 at 4; Doc. 53-2 at 1). Lieutenant Richert asked Perigo to remove his clothing so that he could be strip-searched. (Doc. 53 at 4; Doc. 53-1 at 9-10). Perigo refused to remove his clothes because he did not want to take his clothes off in front of a man. (Doc. 53 at 4; Doc. 53-2 at 11 Doc. 53-3, Affidavit of Lieutenant James Haring, pp. 2-4). Lieutenant Richert again directed Perigo to remove his clothes. (Doc. 53 at 4; Doc. 53-3 at 2). Perigo again refused to remove his clothes. (Doc. 53 at 4; Doc. 53-3 at 2). For a third time, Lieutenant Richert instructed Perigo to remove his clothes. (*Id.*). For a third time, Perigo refused to remove his clothes. (*Id.*). Lieutenant Richert was concerned that Perigo could be concealing contraband. (*Id.*). Lieutenant Richert deployed a one (1) second burst of OC spray ("pepper spray"). (*Id.*). After being sprayed, Perigo removed his clothes. (*Id.*). While removing his clothes, Perigo repeatedly cursed at Lieutenant Richert. (*Id.*). Lieutenant Richert informed Perigo that he could take a shower to relieve the effects of the OC spray. (Doc. 53 at 5; Doc. 53-3 at 2).[3] Perigo did not take a shower. (*Id.*). Perigo was strip-searched and issued a suicide-resistant gown. (*Id.*). Perigo was then escorted to the female visitor's room and placed on a fifteen (15) minute suicide watch. (Doc. 53 at 5; Doc. 53-3 at 1).

At approximately 1:25 p.m., Perigo began behaving violently, charging towards the visiting room door and striking the glass with his heel. (Doc. 53 at 5; Doc. 53-3 at 1-2). Perigo kicked the window, causing it to shatter. (Doc. 53 at 5; Doc. 53-1 at 14). Lieutenant James Haring, Lieutenant Richert, Sergeant Wallendorf, Deputy Geggus, and Deputy Decker then escorted Perigo to

---

[3] In his deposition, Perigo disputed this part of the record in that he claimed that he was only ordered once to remove his clothes and that he was allowed to use some water to alleviate the effects of the pepper spray, but not to actually take a shower. (Doc. 53-1, pp. 11-12). However, due to Perigo's failure to respond to the motion, and the fact that Defendants' allegations in the statement of fact are supported by the record, the Court will not consider Perigo's version of this event.

Segregation Unit 1. (Doc. 53 at 5; Doc. 53-3 at 2). While being escorted to Segregation Unit 1, Perigo was not handcuffed. (*Id.*). During the movement to Segregation Unit 1, Perigo was never sprayed with mace. (Doc. 53 at 5; Doc. 53-1 at 16-17). Upon entry into Segregation Unit 1, Haring instructed Perigo to kneel down and remain in that position until all jail staff exited the Unit. (Doc. 53 at 5; Doc. 53-3 at 2). Perigo refused to kneel down. (*Id.*). Perigo was repeatedly instructed to kneel down. (*Id.*). Perigo repeatedly refused to kneel down. (*Id.*). Decker deployed a one (1) second burst of OC spray on Perigo. (*Id.*). After being sprayed, Perigo complied and kneeled down while jail staff exited Segregation Unit 1. (*Id.*). Perigo was informed he should rinse his eyes with water to ease the effects of the OC spray. (*Id.*). Segregation is equipped with a wash basin and faucet. (*Id.*). Perigo used the available water to wash his face. (Doc. 53 at 6; Doc. 7 at 10). Video footage of the incident was uploaded to the jail drive. (Doc. 53 at 6; Doc. 53-4, Video of September 14, 2020, incident). Following the events of September 14, 2020, Decker filed an Official Incident Field Report with the Madison County Sheriff's Office. (Doc. 53 at 6; Doc. 7 at 14). On or around October 25, 2021, Perigo filed an Offender's Grievance with the Illinois Department of Corrections ("IDOC"). (Doc. 53 at 6; Doc. 7 at 9-10).

*Perigo's Deposition and Defendants' Affidavits*

During his deposition, Perigo testified that while he was being transferred from the female visiting room to the segregation unit, Haring grabbed Perigo by his wrist and "took his arm up in the air behind [his] back" to an extent that Perigo thought that Haring would "break [Perigo's] shoulder blade or dislocate [his] shoulder. (Doc. 53-1, p. 19). Perigo testified that Decker slammed Perigo to the ground and Geggus told Perigo, "This is what you get for beating up on your mother," then kicked Perigo in "his lower." (Doc. 53-1, p. 21). According to Perigo, after the officers left the segregation unit, the water was turned off. (Doc. 53-1, p. 25). Perigo was

denied any medical assistance and was forced to use toilet water to alleviate the burning sensation on his face. Regarding Sergeant Wallendorf, Perigo testified that he observed everything that occurred at the segregation unit and "didn't try to assist" Perigo, even though he knew Perigo was maced and that the water was turned off. (Doc. 53-1, p. 22). Perigo testified that following that event, he had bruises and pain, particularly in his face, neck, and back, in addition to the burning sensation as a result of being maced with the pepper spray. (Doc. 53-1, pp. 24-25).

Haring attested in his affidavit that Perigo was never slammed to the floor, kicked, or denied clean water while at Madison County segregation. (Doc. 53-3, p. 3). However, this part of Haring's affidavit was not included in the statement of facts, has not been deemed admitted, and is disputed by Perigo.

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). Further, a "nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, . . . automatically result in judgment for the movant"; the movant

"must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir.2006); *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 997 (7th Cir.1996). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

*Count 1*

In Count I, Perigo raises a Fourteenth Amendment claim against Defendant Richert for spraying Perigo directly in the eyes with mace on September 14, 2020, following Perigo's request to be placed on suicide watch. (Doc. 7, p. 15). The designation of this count in the threshold review of the Complaint suggests that Perigo raised a condition of confinement claim: Richert allegedly responded to Perigo's request for placement on suicide watch by taking Perigo to the shower room and spraying him in the eyes with mace when he failed to remove his clothes quickly as he was directed. (*Id.*). A closer look at the Complaint, however, suggests that Perigo may have purported to raise an excessive force claim. Specifically, Perigo alleged that following his request to be placed on a suicide watch, he was taken to the shower where he was ordered to remove all clothing in a quick manner. (Doc. 15, p. 2). When he failed to do so quickly enough, Richert allegedly sprayed Perigo in the eyes with mace and denied him adequate time to wash the powerful chemical agent from his face. (*Id.*). Perigo alleged that Richert's action was unprovoked, unnecessary, and without cause. (*Id.*). Accordingly, the Court will address the motion for summary judgment under both legal bases.

First, the record before the Court does not support Perigo's allegations for Richert's use of excessive force in violation of the Fourteenth Amendment. The issue is whether the force Richert "purposely or knowingly used against [Perigo] was objectively unreasonable." *Kingsley v. Hendrickson,* 576 U.S. 389, 397, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Relevant factors include, but are not limited to, "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citing *Graham,* at 396). "[T]he use of pepper spray against a detainee is not unconstitutional *per se.*" *See Johnson v. Dart*, No. 20-CV-06500, 2025 WL 964962, at *8–11 (N.D. Ill. Mar. 31, 2025) (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment"); *Burton v. Ruzicki*, 285 F. App'x 882, 885 (7th Cir. 2007) (holding in the context of a Fourteenth Amendment claim brought by a pretrial detainee that use of pepper spray was not excessive when "in respons[e] to an inmate who refused to obey [officers'] orders")). Indeed, when used to restore discipline in custodial facilities, courts have found that the use of pepper spray does not amount to excessive force. *See Carr v. Beth*, 465 F. App'x 567, 571 (7th Cir. 2012) (upholding dismissal of excessive force claim where "a finder of fact could not reasonably infer from the [use of pepper spray] that [the defendant's] motive was anything more than a need to restore discipline"). On the other hand, "gratuitous or unprovoked"

use of pepper spray has been found to amount to excessive force in violation of the Fourteenth Amendment." *Brooks v. City of Aurora*, 653 F.3d 478, 487 (7th Cir. 2007) (collecting cases).

Here, at the time of the mace incident, Perigo was actively resisting Richert's repeated orders to remove his clothes, so he could be strip-searched. Richert did not immediately resort to macing Perigo. He repeated his instruction for Perigo to remove his clothes three times before deploying a one (1) second burst of pepper spray. And he did so after it became clear that Perigo would not be willing to comply on his own. As Perigo testified at his deposition: "I am not going to take my clothes off in front of a man, that is not me." (Doc. 53-1 at 11). Richert's repeated instructions prior to the mace incident are indicative of his efforts "to temper or to limit the amount of force." *Kingsley*, 576 U.S. at 397. Additionally, it appears that resort to the use of the pepper spray was "less intrusive than, and likely preferable to, a physical struggle" to ensure Perigo's compliance with Richert's order to remove his clothes. *See Padula v. Leimbach*, 656 F.3d 595, 603 (7th Cir. 2011) ("pepper spray is generally of limited intrusiveness" and "a very reasonable alternative to escalating a physical struggle with an arrestee") (internal citation omitted).

Further, Richert's use of a one (1) second burst of pepper spray was in response to a significant security concern and served the legitimate interest of having Perigo remove his clothes. Prior to the mace incident, Perigo had just been transported to Madison County on a felony hold for the criminal offense of aggravated battery, but the booking process was paused when he asked to be placed on suicide watch. Because Perigo's booking process was halted, there was a legitimate need to strip-search Perigo to determine whether he was in possession of a weapon, drugs, or any other item of contraband that would compromise the safety and security of Perigo, the Madison County staff, and other pretrial detainees. Not only was this a threat reasonably perceived by

Richert, but also placing Perigo on suicide watch included issuing him a suicide-resistant gown, which also required him to remove his clothes.

Additionally, there is no evidence that Perigo suffered a serious injury as a result of being maced with a one (1) second burst of OC spray while he was in the Madison County showers. Unless the use of pepper spray aggravated an underlying condition, courts have routinely held that "the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions." *Buchanan v. Pfister*, 2018 WL 4699778, at *7 (N.D. Ill. Oct. 1, 2018) (collecting cases); *cf. Young v. Breeding*, 929 F. Supp. 1103 (N.D. Ill. 1996) (severe asthma attack caused by mace was an objectively serious medical condition). Here, there is no indication that the mace incident in the Madison County showers caused Perigo any injury or aggravated any underlying conditions. In fact, Perigo was advised to take a shower to relieve the effects of the pepper spray, and Perigo testified at his deposition that he was allowed "a very little bit of water to try to get some of the chemical off of [his] face. (Doc. 53-1, p. 12). Accordingly, considering the entirety of the facts and surrounding circumstances, no reasonable juror could find that Richert's use of a one (1) second burst of pepper spray was objectively unreasonable.

The Court also finds that Perigo cannot prevail on grounds of unconstitutional conditions of confinement for being maced in response to being asked to be placed on suicide watch. To state a claim under the Fourteenth Amendment, a pretrial detainee must set forth facts suggesting that each defendant "acted purposefully, knowingly, or perhaps even recklessly" in response to conditions posing an excessive risk to his health or safety and that the defendant's actions were "objectively unreasonable." *Miranda v. County of Lake*, 900 F.3d 335, 352-54 (7th Cir. 2018). The defendant's actions will be deemed objectively unreasonable when they are not "rationally related to a legitimate non-punitive governmental purpose" or they are "excessive in relation to

that purpose." *Hardeman v. Curran*, 933 F.3d 816, 822 (7th Cir. 2019) (citing *Kingsley*, 576 U.S. at 397). However, because only "objectively [and] sufficiently serious" deprivations are actionable as a violation of the Constitution, a detainee still "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Guitron v. Noonan,* 2020 WL 4904073 at *6 (E.D.Wis. Aug. 20, 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Here, even assuming that the use of pepper spray while placing Perigo on a suicide watch posed a substantial risk of serious harm for Perigo, it was "rationally related to a legitimate non-punitive governmental purpose" and was not "excessive in relation to that purpose." As set forth above, Richert deployed a one (1) second burst of pepper spray in response to Perigo's persistent recalcitrance not only to ensure Perigo was placed in a suicide-resistant gown, but also to confirm that Perigo did not conceal any weapons, drugs, or any other item of contraband. This is a legitimate non-punitive purpose. Further, for the reasons explained above, deploying a one (1) second burst of pepper spray was not excessive in relation to that purpose: Richert only resorted to the use of the pepper spray after Perigo's persistent refusal to remove his clothes in front of a man and he thereafter provided Perigo with the opportunity to alleviate the effects of the pepper spray by the use of available water. Accordingly, based on the undisputed facts, Perigo was not subjected to unconstitutional conditions of confinement when he was maced in the Madison County showers while being placed on suicide watch. Therefore, Richert is entitled to summary judgment as to Count 1 of the Complaint.

***Count 3***

In Count 3, the issue is whether the force Defendants Haring, Wallendorf, Geggus, and Decker "purposely or knowingly used against [Perigo] was objectively unreasonable." *Kingsley,* 576 U.S. at 397. The Court first looks at Perigo's allegation against Haring. Perigo argues that

while transferring him to the segregation unit, Haring grabbed Perigo's wrist, raised it above his head, and pulled his arm behind his back, then slammed Perigo to the ground. Then, allegedly with no provocation, Haring proceeded to use a one (1) second burst of pepper spray on Perigo; he then left the room and turned off the water supply. Haring denies that Perigo was ever slammed, kicked, or denied clean water. Further, based on the admitted facts, Perigo's use of the pepper spray was not unprovoked: Haring only used the pepper spray after Perigo repeatedly refused to kneel while the jail staff was exiting the unit.

Based on these facts, the Court finds that no reasonable jury could infer that Haring's mere use of a one (1) second burst of pepper spray on Perigo under those circumstances was unreasonable and did not serve a legitimate interest. However, there remain material questions of fact in dispute with respect to the events before and after the macing that preclude the entry of summary judgment. Specifically, it is unclear whether the water at the segregation unit was turned off after the jail staff exited the unit. Haring denies it, but Perigo testified to that effect. Further, the admitted facts demonstrate that Perigo used the "available water" to alleviate the effects of the pepper spray, but it is unclear whether that available water was clean. In fact, in support of that allegation, Defendants cite Perigo's deposition, where Perigo testified that only toilet water was available. Considering the totality of the surrounding circumstances and viewing the record in the light most favorable to the nonmoving party, a reasonable jury could infer that turning off the unit water after macing Perigo did not serve any legitimate non-punitive purpose and amounted to an unreasonable use of excessive force. Likewise, a reasonable jury could infer that Haring's use of force was unreasonable when he grabbed Perigo's wrist, raised it above his head, and pulled his arm behind his back, then slammed Perigo to the ground. Therefore, while it is established that

the mere use of a one (1) second burst of pepper spray on Perigo did not amount to use of excessive force in violation of the Fourteenth Amendment, Haring is not entitled to summary judgment.

Similarly, there is sufficient evidence in the record for a reasonable jury to infer that Geggus and Decker purposely or knowingly used force against Perigo that was objectively unreasonable: Perigo testified that once in the segregation unit, Decker slammed him to the ground without provocation, then Geggus told Perigo, "This is what you get for beating up on your mother," then kicked Perigo in "his lower." While Defendants deny these allegations, this is a matter of fact to be decided by the trier of fact. Further, there is nothing in the record to preclude a finding that those actions did not serve any legitimate non-punitive purpose. Accordingly, Geggus and Decker cannot prevail in their motion for summary judgment.

As to his claim against Wallendorf, Perigo does not allege that Wallendorf actively used any force against him. Rather, the basis of Perigo's claim against Wallendorf is that he failed to intervene and protect him during the remaining defendants' use of excessive force against him. To prevail on a failure-to-protect claim, Perigo must show that Wallendorf's conduct was (i) purposeful, knowing, or reckless; and (ii) objectively unreasonable. *Kemp v. Fulton Cnty.*, 27 F.4th 491, 498 (7th Cir. 2022). For a failure-to-intervene claim, Perigo would need to show that Wallendorf had reasons to know that the other defendants were using excessive force or committing a constitutional violation, and that he "had a realistic opportunity to intervene to prevent the act from occurring." *Johnson*, No. 20-CV-06500, 2025 WL 964962 at *8-11 (citation omitted). As noted, based on the record, a reasonable jury could find that Haring, Decker, and Geggus used excessive force against Perigo. Further, Perigo testified that Wallendorf was present during the time Haring, Decker, and Geggus allegedly kicked him, threw him on the ground, maced him, and then turned off the water of the unit, denying him any medical assistance. Viewing the

record in the light most favorable to Perigo, a reasonable jury could infer that Wallendorf knew of the other officer's use of excessive force and had a reasonable opportunity to intervene, yet failed to do so. Accordingly, there are material facts in dispute that prevent the entry of summary judgment in Wallendorf's favor.

## Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 53) is **GRANTED in part,** as to Perigo's claim against Richert (Count 1), **and DENIED in part,** as to Perigo's claims against Haring, Wallendorf, Geggus, and Decker (Count 3)**.** Perigo's claim against Defendant Craig Richert (Count 1) is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case and to **TERMINATE** Defendant Craig Richert.

**IT IS SO ORDERED.**

**DATED: August 7, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**